# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE, NASHVILLE

| | | |
|---|---|---|
| REACH RECORDS, LLC and THE REACH GROUP, LLC | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. |
| v. | ) ) | |
| CAPITOL CMG, INC., a subsidiary of UNIVERSAL MUSIC GROUP, INC. | ) ) ) | |
| Defendant. | ) ) ) | |

## COMPLAINT

Plaintiffs Reach Records, LLC ("Reach") and The Reach Group, LLC ("Group") (collectively herein referred to as "Plaintiffs") file this Complaint ("Complaint") against Defendant Capitol CMG, Inc., a subsidiary of Universal Music Group, Inc. ("Defendant") and allege as follows:

## NATURE OF THIS ACTION

This is a civil action for breach of contract, intentional misrepresentation, and negligent misrepresentation. Defendant breached its obligations to purchase Reach as set forth in a letter of intent dated August 8, 2025 (the "LOI"), which evidenced the principal terms of a transaction to which Plaintiffs and Defendant had agreed, and having reached a meeting of the minds on each of the material terms, memorialized them in the LOI. In fact, the LOI shows that the parties had agreed that all of the material terms, but for one, were not subject to renegotiation (except for events which did not occur), and the remaining term consisted of "customary" provisions upon which the parties also agreed. Defendant, however, reneged because, according to its CEO,

Defendant's senior management had determined that the agreed and non-negotiable Purchase Price was not approved, after having already approved it and entering into the LOI. The LOI constitutes an enforceable, binding agreement. The LOI is attached as **Exhibit A**[1].

## THE PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Reach Records, LLC is a Georgia limited liability company. The sole member of Reach Records, LLC is The Reach Group, LLC, which is a Georgia limited liability company. All of The Reach Group, LLC's members reside in Georgia. Reach Records, LLC's principal place of business is in Georgia.

2. Defendant is a California corporation with its primary office in California. Defendant may be served via its registered agent, CT Corporation System, located at 300 Montvue Rd., Knoxville, TN 37919.

3. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. This Court has both general and specific personal jurisdiction over Defendant because it resides in Tennessee and purposely availed itself to the state of Tennessee by engaging in significant business operations in Nashville, Tennessee. Defendant's CEO, and a key witness in the case, Brad O'Donnell, is located in Nashville and works out of Defendant's Nashville office. Defendant's Nashville office also boasts over 40,000 square feet of office space, underscoring Defendant's significant operations in Tennessee. Upon information and belief, a large number of Defendant's employees are located in Tennessee and based out of the Nashville office. Carlos Monnaco and Patrick Ogilvy, individuals who worked on this transaction on behalf of Defendant

---

[1] The Purchase Price and other information is redacted in **Exhibit A** due to the sensitive nature of the same. Defendant has an unredacted copy of **Exhibit A**. This attachment satisfies Tenn. R. Civ. P. 10.03.

2

and who are, therefore, key witnesses in this case, are located in and based out of Defendant's Nashville office. Further, the claims in this Complaint arise out of and relate to Defendant's presence and business in Nashville, Tennessee. Negotiations related to and surrounding the deal took place in Nashville, and pursuant to the LOI, the parties agreed upon and entered a Tennessee choice of law provision.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 for the following reasons: Defendant's significant presence and operations in Nashville, Tennessee; the majority of the events and omissions giving rise to this lawsuit occurred in Nashville, Tennessee; and a majority of key witnesses are located in Nashville, Tennessee.

## FACTUAL ALLEGATIONS

6.  Throughout 2025, Reach and Defendant had been working on a transaction by which Defendant would acquire Reach, including certain company assets. The parties had been negotiating a Purchase Price for which Defendant would buy Reach. On June 14, 2025, Brad O'Donnell, in his capacity as CEO of Defendant, conveyed to Ben Washer, in his capacity as CEO of Reach, the following: (i) there is an investment committee for Universal Music Group that needs to be consulted if a price is above a certain dollar amount – which this exceeded; (ii) that there was an investment committee meeting upcoming, and during that meeting, the deal would be reviewed; (iii) if the deal was approved in that investment committee meeting, Brad would advise Ben of the final number and other high level details; and (iv) if the investment committee approved the deal, Brad would send Ben an offer letter following the aforementioned conversation.

7.  On a phone call on July 24, 2025, Brad told Ben that the investment committee had approved the transaction and the Purchase Price.

8. On July 31, 2025, the parties exchanged a first draft of the LOI, which included the Purchase Price and certain closing conditions.

9. On August 8, 2025, the parties executed the LOI containing the Purchase Price (and other material terms of the deal).

10. The parties agreed that the Purchase Price was not subject to renegotiation absent material adverse findings during final due diligence, and that the Purchase Price was "deemed a binding provision as part of the definitive Purchase Agreement." (*See* LOI § 9(a))

11. After the execution of the LOI, the parties completed five rounds of due diligence.

12. At no point during these five rounds of due diligence were any material adverse findings as to or affecting the Purchase Price discovered or relayed to Reach, which, had they been, would have triggered Reach's ability to remedy any such findings pursuant to § 1(b) of the LOI.

13. On August 22, 2025, Defendant sent a first draft of a membership interest purchase agreement (generally, the "MIPA") to be used to finalize the deal. This draft included the agreed-upon Purchase Price and the other material, binding and non-negotiable term in the LOI.

14. The parties exchanged drafts with redlines of the MIPA on August 25, August 26, August 29, September 1, September 8, and September 10, 2025. In all of these drafts, the Purchase Price and the material terms of the deal (including other material terms previously agreed upon in the LOI) remained unchanged.

15. On September 12, 2025, on the eve of closing the deal, Brad O'Donnell told Reach that there was a layer of approval as to the Purchase Price and that the agreed-upon price was too high due to its earnings multiple value, and, therefore, despite the agreement that the Purchase Price was not renegotiable, it was not approved.

16. Defendant has breached its obligation evidenced by the LOI.

4

**COUNT I:**

**BREACH OF CONTRACT**

17.     Reach realleges and incorporates the foregoing paragraphs as if set forth fully herein.

18.     The LOI is a valid and enforceable contract.

19.     Reach performed all its duties pursuant to the contract.

20.     Defendant breached the contract by refusing to perform according to the binding terms.

21.     Given the parties' extensive work on the deal, Defendant's last-minute, unjustified change of position as to the Purchase Price also constitutes a breach of its implied duty of good faith and fair dealing and its express duty to negotiate the Purchase Price in good faith pursuant to § 9 of the LOI.

22.     Reach suffered damages as a direct and proximate result of Defendant's breach, and therefore, Reach is entitled to damages accordingly.

**COUNT II:**

**INTENTIONAL MISREPRESENTATION[2]**

23.     Reach realleges and incorporates the foregoing paragraphs as if set forth fully herein.

24.     Brad O'Donnell's statements on behalf of Defendant to Ben Washer on behalf of Reach were (i) false, (ii) involved material facts as to Purchase Price and the approval for the deal, and (iii) known by Defendant to be false at the time the statements were made or made

---

[2] The Tennessee Court of Appeals has noted that fraud, fraudulent misrepresentation, and intentional misrepresentation are the same cause of action, and therefore, to avoid confusion, the term "intentional misrepresentation" should be used to exclusively denote fraud. *Huddleston v. Harper*, No. E2014-01174-COA-R3-CV, 2015 Tenn. App. LEXIS 519, 2015 (Tenn. Ct. App. 2015).

5

representations without knowing whether they were true or false.

25.     Reach did not know that the representations made by Brad O'Donnell were false, and Reach was justified in relying on their truth.

26.     Defendant's actions and misrepresentations were reckless, wanton, and willful, and made with, at best, a conscious disregard as to the implications of the representations or, at worst, with the intent to deceive and harm Reach.

27.     Reach suffered damages as a direct and proximate result of Defendant's intentional misrepresentation, and therefore, Reach is entitled to damages accordingly.

## COUNT III:

## NEGLIGENT MISREPRESENTATION

28.     Reach realleges and incorporates the foregoing paragraphs as if set forth fully herein.

29.     In the alternative, the misrepresentations set forth in Count II above constitute negligent misrepresentation.

30.     Defendant did not exercise reasonable care when making the above-referenced representations to Reach, and Reach was justified in its reliance on Defendant's representations, given Defendant's knowledge of its business and business process and the parties' significant efforts related to the deal.

31.      Reach suffered damages as a direct and proximate result of Defendant's negligent misrepresentation, and therefore, Reach is entitled to damages accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that they be granted the following relief against Defendant:

6

1. a judgment for damages in an amount to be proven at trial on all claims asserted, but in no event, less than $75,000.00[3];

2. all actual, compensatory, consequential, special, punitive, and exemplary damages available by law or contract;

3. its costs and prejudgment, post-judgment, and any and all other interest permitted by law; and

4. any such other and further relief this Court deems appropriate.

Respectfully submitted,

**GRIFFIN BOWEN, PLLC**

_/s/ Jay S. Bowen_
Jay S. Bowen, TN Bar No. 2649
John J. Griffin, Jr., TN Bar No. 15446
Tanner W. Yancy, TN Bar No. 37662
48 Music Square East
Nashville, Tennessee 37203
(615) 742-4800
jbowen@griffinbowen.com
jgriffin@griffinbowen.com
tyancy@griffinbowen.com

_Attorneys for Plaintiffs_

---

[3] Plaintiffs include this provision in order to comply with Tennessee's requirement that an _ad damnum_ be pled. _See Newcomb v. Kohler Co_., 222 S.W.3d 368, 383 (Tenn. Ct. App. 2006). This provision is not intended to be an itemized statement of the claims or limit available damages in any way.