UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| REACH RECORDS, LLC and THE REACH GROUP, LLC | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 3:25-CV-01437 ) ) |
| CAPITOL CMG, INC., a subsidiary of UNIVERSAL MUSIC GROUP, INC. | ) ) ) |
| Defendant. | ) ) |

<u>**MEMORANDUM OPINION**</u>

When Capitol CMG, Inc., a subsidiary of Universal Music Group, Inc ("CMG") demanded a lower purchase price on the eve of closing the merger with Reach Records, LLC and Reach Group, LLC ("Reach") crashed. Reach now sues CMG for breach of contract, intentional, and negligent misrepresentation because it alleges the parties had an agreed purchase price. (Doc. No. 1 at 5-6, ¶¶ 17-31). CMG moves to dismiss this case that Reach opposes. (Doc. Nos. 17, 26, 29). The Court will deny the motion.

## I.      <u>Factual Allegations</u>

During 2025, Reach and CMG engaged in acquisition negotiations. (Doc. No. 1 at 3, ¶ 6). On June 14, 2025, CMG's CEO, Brad O'Donnell, informed Ben Washer, Reach's CEO, that to move the possible acquisition forward, the investment committee for Universal Music Group, a subsidiary of CMG, would need to be consulted; if it approved, Reach's CEO would be advised of the "final number" and other details and an offer letter would be sent to Reach. (<u>Id</u>.). The investment committee did so and a few days later, CMG's CEO informed Reach's CEO that the committee had approved the transaction and the "final" purchase price. (Doc. No. 1 at 3, ¶ 7). The parties moved forward exchanging a first draft of the letter of intent ("LOI"), which memorialized

1

the agreed "final" purchase price as well as other closing conditions. (Doc. No. 1 at 4, ¶ 8). Subsequently, on August 8, 2025, Reach and CMG signed the LOI incorporating the agreed "final" purchase price and other essential terms of the deal. (Doc. No. 1 at 4, ¶ 9 & Doc. No. 1-1). Importantly, the signed LOI specified "the Purchase Price was not subject to renegotiation absent a material adverse finding during final due diligence[.]" (Doc. No. 1 at 4, ¶ 10). Paragraph 1(b) of the LOI preserved a distinct mechanism for modifying the purchase price, permitting only those adjustments to which the parties mutually agreed following final due diligence. (Doc. No. 1-1 at 2, ¶ 1(b)).

Following the execution of the LOI, the parties completed five rounds of due diligence. (Doc. No. 1 at 4, ¶ 11 & Doc. No. 18 at 2). Reach contends that, during those five rounds of due diligence, no materially adverse findings affecting the Purchase Price were discovered or communicated to Reach. (Doc. No. 1 at 4, ¶ 12). Accordingly, Reach maintains that no event occurred that would have triggered the LOI's price-adjustment mechanism. (Id.).

The acquisition went forward with CMG sharing with Reach the initial draft of the membership interest purchase agreement ("MIPA"), which contained the agreed "final" "Purchase Price. It also contained other material, binding and non-negotiable term[s]" from the LOI to complete the purchase. (Doc. No. 1 at 4, ¶ 13). From August through September of 2025, the parties continued to exchange drafts and redlines of the MIPA. (Doc. No. 1 at 4, ¶ 14 & Doc. No. 18 at 2-3). During that process, the agreed "final" Purchase Price and other materials terms agreed to in the LOI remained unchanged. (Doc. No. 1 at 4, ¶ 14).

And yet, on September 12, 2025, "the eve of closing the deal" with the completion of due diligence, CMG's CEO informed Reach, "that there was a layer of approval as to the Purchase Price." (Doc. No. 1 at 4, ¶ 15). He said that "the agreed purchase price" was "too high due to its

2

earnings multiple value." (Id.). Notwithstanding that the agreed multi-million dollar purchase price had been final for many months, the acquisition did not occur. (Id.).

## II. Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Venema v. West, 133 F.4th 625, 632 (6th Cir. 2025)(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A plausible claim is established "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Iqbal, 556 U.S. at 678). In other words, to determine whether a complaint has met this standard, "the Court must accept the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and 'take all of those facts and inferences and determine whether they plausibly give rise to the entitlement to relief.'" Mason Sales, LLC v. Talent Creation, Ltd., No. 3:24-cv-00092, 2026 U.S. Dist. LEXIS 55140, at *16 (M.D. Tenn. Mar. 17, 2026) (quoting Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018)); see also Tapply v. Whirlpool Corp., 148 F.4th 407, 413 (6th Cir. 2025). The Court's analysis is "limited to the content of the complaint, although it may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to or incorporated by reference into the complaint." Hill v. Ardent Health Servs., 806 F. Supp. 3d 711, 715 (M.D. Tenn. 2025) (citing Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001)). Accordingly, the Court will consider the Complaint and the LOI.

Rule 9(b) requires a party bringing fraud-related claims to meet a heightened pleading standard that "state[s] with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and identifies "'the who, what, when, where, and how of the alleged fraud.'" Greer v. Strange Honey Farm, LLC, 114 F.4th 605, 614 (6th Cir. 2024) (quoting Sanderson v. HCA-The Healthcare

Co., 447 F.3d 873, 877 (6th Cir. 2006) (internal quotation marks omitted)). The complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Id. at 614-615 (internal quotation marks omitted). There must also be allegations describing the "fraudulent scheme and the resulting injury." Id. at 615 (quoting New London Tobacco Mkt., Inc. v. Ky. Fuel Corp., 44 F.4th 393, 411 (6th Cir. 2022)). Mere allegations of possible fraud are insufficient; instead, the complaint must plead facts that convince the court that "the underlying fraud 'in all likelihood occurred.'" Id. (quoting United States ex. rel. Hirt v. Walgreen Co., 846 F.3d 879, 882 (6th Cir. 2017)). Nevertheless, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### III.     Analysis

#### a.   Count 1: Breach of Contract

CMG seeks dismissal of Reach's breach of contract claim. The LOI dictates that Tennessee substantive law governs this dispute.[1] To maintain a breach of contract claim, the plaintiff must allege: "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach[.]" ARC LifeMed, Inc. v. AMC-Tenn., Inc.,

---

[1] In paragraph 10 of the LOI, the parties agreed that "[t]his LOI shall be governed by the laws of the State of Tennessee without regard to the conflicts of law provisions thereof." (Doc. No. 1-1 at 5, ¶ 10). Moreover, paragraph 9(b) maintained that the provision contained in paragraph 10 "(Governing Law; Miscellaneous) will be binding as of the date of this New LOI[.]" (Doc. No. 1-1 at 5, ¶ 9(b)). Even without the choice of law provision in the LOI, Tennessee law would apply based upon the parties' dealings in Tennessee. See Town of Smyrna v. Mun. Gas Auth. of Ga., 723 F.3d 640, 645, 646-647 n.3 (6th Cir. 2013)("For claims based on a contract, Tennessee follows the rule of *lex loci contractus*, meaning it presumes that the claims are governed by the jurisdiction in which it was executed absent a contrary intent….For claims lying in tort, Tennessee uses the 'most significant relationship' test, considering: the place of the injury, the place where the conduct causing the injury occurred, the place of incorporation or place of business of the parties, and the place where the relationship is centered.")

183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)(citation and internal quotation marks omitted); see Fed. Ins. Co. v. Winters, 354 S.W.3d 287, 291 (Tenn. 2011). To determine whether a party plausibly alleges a breach of contract, the Court is guided by the parties' intent as reflected by the plain and ordinary meaning of those words. Estate of Hunt v. Hunt, 389 S.W.3d 755, 758 (Tenn. Ct. App. 2012). When the words of the contract are clear and unambiguous, the literal meaning controls resolution of the dispute. Id. If the words in the contract are subject to more than one interpretation, the Court employs rules of construction to determine the parties' intent. Barnes & Robinson Co. v. OneSource Facility Servs., 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006). The incurable defect, CMG argues, is Reach's failure to allege the existence of the very first element – a valid contract. (Doc. No. 18 at 1, 4-7). CMG believes that the signed LOI was not a final contract, rather merely an aid for further negotiations toward execution of the purchase agreement. (Id.). Moreover, CMG argues the plain language of the LOI places limitations on the binding nature of the LOI. (Doc. No. 18 at 5-7). As such, the LOI cannot form the basis for a breach of contract claim. (Id.). In response, Reach maintains that the language in the LOI as well as its nonnegotiable terms did, in fact, create an enforceable contract. (Doc. No. 26 at 3-4, 6-7, 9-19).

The plain language of section 9 of the LOI confirms the parties' intention that certain terms in the LOI were final. To start, the heading for Section 9 is "Binding Nature of LOI Provisions." The section then specifically highlights section 1(b) (Purchase Price) and states it "will not be subject to renegotiation by the parties absent material adverse findings during final due diligence and [the Purchase Price] will be deemed a binding provision as part of the definitive Purchase Agreement." (Doc. No. 1-1 at 5).

In contrast, the LOI specifies what provisions would not be binding. (Doc. No, 1-1 at 5, ¶ 9(c)). Unlike the agreement in Barnes, where the parties explicitly intended "to consider a proposed

purchase or contemplated transaction in anticipation of a final agreement between the parties," Nova Molecular Techs., Inc. v. Penn. Specialty Chems., Inc., No. 08-2039-STA, 2008 U.S. Dist. LEXIS 69230, at *13 (W.D. Tenn. Sept. 12, 2008)(internal quotation marks omitted), the LOI, by the parties' agreement, contained explicit legally binding provisions while separately specifying which provision would not be effective until incorporated into the Purchase Agreement.

It is true that the LOI contemplated finalizing other issues to be included in the Purchase Agreement. However, the process of finalizing the final Purchase Agreement does not lessen their agreement on the final agreed purchase price. See Nova Molecular Techs., Inc. v. Penn. Specialty Chems., Inc., No. 08-2039-STA, 2008 U.S. Dist. LEXIS 69230, at *12 (W.D. Tenn. Sept. 12, 2008); see Universal Props. V. Regions Bank, No. 3:11-cv-538, 2012 U.S. Dist. LEXIS 135256, at *11 (E.D. Tenn. Sept. 21, 2012) ("It is not fatal to a contract that some terms are 'left to be agreed upon.'")(quoting Gurley v. King, 183 S.W.3d 30, 41 (Tenn. Ct. App. 2005)). This is dispositive because it is alleged that the only reason CMG offered to avoid closing was that the purchase price was too high.

Accordingly, Reach has plausibly alleged the existence of an enforceable contract and CMG's breach. The motion to dismiss will be denied as to Count I.

### b. Counts II and III: Intentional and Negligent Misrepresentation

Reach also alleges claims for intentional misrepresentation and, in the alternative, negligent misrepresentation. Each of these claims is governed by Fed. R. Civ. P. 9(b). Thompson v. Bank of Am., N.A., 773 F.3d 741, 751 (6th Cir. 2014). Under Tennessee law, a plaintiff seeking to recover for intentional misrepresentation must prove the following elements:

> (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or

6

did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation.

Lapinsky v. Cook, 536 S.W.3d 425, 443 (Tenn. Ct. App. 2016). To recover for negligent misrepresentation, a plaintiff must establish that:

(1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; (2) the defendant supplies faulty information meant to guide others in their business transactions; (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relies upon the information and suffers a pecuniary loss as the result of the reliance.

Hill v. Ardent Health Servs., 806 F. Supp. 3d 711, 716 (M.D. Tenn. 2025)(citing Dixon v. Producers Agric. Ins. Co., 198 F. Supp. 3d 832, 837 (M.D. Tenn. 2016) (citing Robinson v. Omer, 952 S.W.2d 423 (Tenn. 1997))). Both claims, at their core, require the defendant to "misrepresent a fact or supply faulty information." Id.

In its motion, CMG argues these claims should be dismissed because Reach did not plead with particularity that CMG's CEO alleged statements were knowingly false when made, the basis for their falsity, or any factual allegations demonstrating justifiable reliance by Reach. (Doc. No. 18 at 9-12). Moreover, CMG maintains that the alleged statements by the CEO if anything where statements about future action, not a present or past fact.

The Court rejects CMG's self-serving after the fact explanation because Reach has pleaded with particularity and logic the essential elements of its tort claims. The story alleged by Reach is an old and familiar tale. On the eve of closing, CMG pulls out of the deal because of the purchase price. It has the temerity to do so after its CEO tells Reach that the investment committee approved the deal as well as the Purchase Price and that its approval authorizes CMG to enter the LOI. Then, CMG signs the LOI that confirms that the Purchase Price is final and any modification is limited

to the mechanism in the LOI. After which Reach and CMG proceed to complete due diligence, go through drafts of documents and finalize a Purchase Agreement that triggers the closing. Only then does CMG's CEO say there is yet another layer of internal review and now CMG wants a lower price. The CEO either knew or should have known whether the purchase price was final, but he led Reach to believe it was, knowingly or oblivious to the truth until closing. Only then was Reach damaged not only losing the lost time and work to get to closing but also the consideration it was due at closing. This story is more than enough to particularly and plausibly allege intentional and negligent misrepresentation.

This Court finds CMG's misrepresentations caused Reach concrete injury by inducing Reach to proceed with a transaction that CMG later abandoned over a purchase price that the parties had already set. The Complaint alleges a direct injury flowing from CMG's statements and sufficiently pleads justifiable reliance at this stage of the litigation. More tellingly, however, is the plain language of the LOI: if the purchase price truly provided an obstacle, CMG was required to invoke the price-adjustment mechanism set out in Paragraph 1(b), not abandon the bargain it had already made.

CMG's motion to dismiss as to Counts II and III will be denied.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE